**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICKY DEGRAW,**

                 **Plaintiff,**               3:13-cv-782
                                                                            (GLS)

                 v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,

                 **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Lachman, Gorton Law Firm             PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN       JEREMY A. LINDEN
United States Attorney                 Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### I. **Introduction**

Plaintiff Ricky Degraw[1] challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.)[2] After reviewing the administrative record and carefully considering Degraw's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. **Background**

On December 22, 2010, Degraw filed an application for SSI under the Social Security Act ("the Act"), alleging disability since August 5, 2001. (Tr.[3] at 62-68, 123-29.) After his application was denied, (*id.* at 69-72), Degraw requested a hearing before an Administrative Law Judge (ALJ), which was held on April 2, 2012, (*id.* at 28-61, 76-78). On May 4, 2012, the

---

[1] Plaintiff's brief refers to plaintiff by his given name, "Ricky." (*See generally* Dkt. No. 11.) The court, in keeping with its ordinary practice, will refer to plaintiff by his surname, "Degraw." Counsel is reminded that, as a basic principle of courtroom decorum, when appearing in this court, all persons should be referred to by their surnames and not by their first or given names.

[2] Because no application for Disability Insurance Benefits (DIB) appears in the record and it is otherwise clear that Degraw's request for review pertains only to his application for SSI, the court ignores the mistaken reference to DIB in his complaint. (Compl. ¶ 1.)

[3] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

2

ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*Id.* at 1-6, 8-27.)

Degraw commenced the present action by filing his complaint on July 2, 2013 wherein he sought review of the Commissioner's determination.  (Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 8, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 11, 14.)

### III.  **Contentions**

Degraw contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 11 at 8-24.)  Specifically, Degraw claims that the ALJ erred in: (1) assessing the severity of Degraw's impairments; (2) determining Degraw's residual functional capacity (RFC); and (3) concluding that there is other work that Degraw can perform.  (*Id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (Dkt. No. 14 at 4-25.)

### IV.  **Facts**

The court adopts the parties' undisputed factual recitations.  (Dkt. No.

11 at 1-8; Dkt. No. 14 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[4] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severity Determination

First, Degraw claims that the ALJ erred in properly evaluating the severity of his impairments. (Dkt. No. 11 at 8-17.) Specifically, Degraw argues that the ALJ erred in failing to find that his back and knee impairments, as well as his depression and psychiatric impairments, were severe. (*Id.*) The court disagrees.

At step two of the sequential evaluation, a claimant has the burden of

---

[4] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

4

establishing that he has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" and mental functions such as "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 416.921(b)(3)-(6). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)). The omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in his RFC determination. *See Tryon v. Astrue*,

5

No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

Here, at step two, the ALJ determined that Degraw's only severe impairment was "possible borderline intellectual functioning." (Tr. at 13-14.) The ALJ determined that Degraw's back and knee problems are not severe because, although he alleged that they related to a 1993 car accident, Degraw had not received treatment in more than ten years or a formal diagnosis for such impairments, and x-rays of his back and knees—the only diagnostic images of record—were negative. (*Id.* at 13, 59-60, 145, 242, 246-47, 284, 302-05.) Further, the ALJ determined that Degraw's psychiatric impairments, including diagnoses of bipolar disorder, anxiety disorder, and depression, are not severe because the record does not contain clinical findings to support such diagnoses, and Degraw did not seek psychiatric treatment until February 2012. (*Id.* at 14, 238-39, 335, 337, 338-39.) Because he determined that Degraw suffered a severe impairment, the ALJ continued with the sequential analysis, and, in determining Degraw's RFC, considered all of his impairments including his back and knee pain, and his bipolar disorder. (*Id.* at 16-22.) The ALJ

6

discussed in detail Degraw's treatment notes with respect to these impairments, as well as the opinions of his treating and examining medical sources. (*Id.*); *see infra* Part VI.B. As the disability analysis continued and the ALJ considered claimant's severe and non-severe impairments in making his RFC determination, any error at step two is, at most, harmless. *See Tryon*, 2012 WL 398952, at *4; *see also Plante*, 2011 WL 6180049, at *4.

**B.     RFC Determination**

Degraw next contends that the ALJ erred in determining his RFC. (Dkt. No. 11 at 17-22.) According to Degraw, the ALJ's conclusion that he can perform work at all exertional levels is not supported by substantial evidence. (*Id.* at 17-21) Further, Degraw argues that the ALJ erred in failing to impose any restrictions resulting from his psychiatric issues. (*Id.* at 21-22.) The Commissioner counters, and the court agrees, that the ALJ properly considered all the evidence of record, and rendered an RFC determination that is supported by substantial evidence. (Dkt. No. 14 at 10-23.)

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an

7

ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence[5] in the record. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 486 (2d. Cir. 2012). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

In this case, the ALJ determined that Degraw has the ability to perform work at all exertional levels, but is limited to "unskilled work that involves simple, one or two-step tasks[,] only occasional contact with the general public[, and no] more than simple reading." (Tr. at 16.) The ALJ based his RFC determination on the reports of consulting examiner Mary Ann Moore and psychological consultant E. Kamin, and Degraw's reported activities. (*Id.* at 16-22.) Specifically, despite his complaints of back and knee pain, Degraw described using a chainsaw, ax, and hammer to split wood, riding his bicycle long distances, walking long distances—including up to twenty-eight miles in the course of a day—and playing pool. (*Id.* at

---

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citation omitted).

8

22, 45, 51, 239-40, 319, 336.) With respect to Degraw's mental impairments, Dr. Moore opined that Degraw was capable of following and understanding simple instructions and performing simple tasks, but may have difficulty dealing with stress, becomes easily overwhelmed, and has poor coping skills. (*Id.* at 240.) According to Dr. Moore, Degraw's ability to relate adequately with coworkers and the public, make appropriate decisions, and maintain a schedule are impaired. (*Id.*) However, after reviewing the evidence of record, Dr. Kamin opined that Degraw is capable of meeting all of the basic mental demands of unskilled work in a low contact setting. (*Id.* at 265-66.)

The ALJ gave Dr. Moore's opinion "partial weight," crediting her conclusion that Degraw is capable of following simple directions and instructions, consistently performing simple rote tasks under supervision, and learning simple tasks, and that his attention, concentration, and memory are somewhat impaired, and he would have difficulty performing complex tasks. (*Id.* at 20.) The ALJ also gave "some weight" to Dr. Moore's opinion that Degraw would have difficulty relating appropriately with coworkers and the public. (*Id.*) However, the ALJ discounted Dr. Moore's opinion that Degraw may have difficulty dealing with stress or

9

maintaining a schedule.  (*Id.*)  The ALJ weighed Dr. Moore's opinion based on the extent that is was supported by the results of her mental status examination, and the remaining evidence of record.  (*Id.*)  In that regard, Dr. Moore's examination revealed that Degraw's manner of relating socially was adequate, his speech was fluent and clear, his thought processes were coherent and goal directed, and his insight and judgment were fair.  (*Id.* at 239.)  However, his motor behavior was restless, his mood was nervous, his affect was anxious, and his attention and concentration, and memory skills were impaired.  (*Id.*)  The ALJ gave "great weight" to the opinion of Dr. Kamin because it was consistent with Dr. Moore's clinical findings.  (*Id.* at 21.)

Degraw argues that the ALJ erred in rejecting the opinion of consultative examiner Edward Southard that he suffers moderate to marked restrictions as a result of his low back and knee pain.  (Dkt. No. 11 at 17-20; Tr. at 21, 242-45.)  Further, Degraw contends that the ALJ erred in finding him partially credible, and in concluding that he "does not have a diagnosable psychiatric condition," despite the diagnoses of Drs. Moore and Kamin.  (Tr. at 16-17, 21; Dkt. No. 11 at 20-22.)  However, after reviewing the administrative record, the court concludes that Degraw's own

reports and testimony rendered the medical opinions of record less credible, and that the ALJ did not improperly substitute his opinion for that of a medical expert, but, rather, questioned the facts provided to Degraw's consultative examiners. *See, e.g.*, *Roy v. Massanari*, No. Civ. 3:01CV306, 2002 WL 32502101, at *3 (D. Conn. June 12, 2002). In particular, despite claiming his disability began in August 2001, Degraw failed to obtain any treatment for his physical or psychiatric impairments until after he applied for disability benefits in December 2010. *See* SSR 96-7p, 61 Fed. Reg. 34,483, 34,487 (July 2, 1996) (explaining that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"); (*see generally* Tr. at 237-372.) Degraw testified that he failed to seek treatment because he is "not big with doctors," and did not have insurance, and that he only began seeing his treating physicians in order to obtain disability benefits. (Tr. at 60.) Further, Degraw told treating psychologist Robert Russell that he was "trying to get SSI and the [d]octor said that the only way [he] could do it was to go through [m]ental [h]ealth," but that he did not wish to receive any mental health services, only a disability evaluation. (*Id.* at 335, 337.)

Degraw claims that the ALJ erred in discounting his subjective

11

complaints due to his failure to seek treatment, because his lack of money and insurance hampered his ability to obtain such treatment. (Dkt. No. 11 at 9.) However, the ALJ properly considered Degraw's testimony that he could not afford medical care and found it to be not credible because he also testified that he received "a significant personal injury award and was able to purchase property and other items[,] and pay his own living expenses for many years using this award." (Tr. at 18, 36.) Thus, the ALJ properly considered Degraw's explanation for his failure to seek treatment, and his determination that such testimony is not credible is supported by substantial evidence. *See* SSR 96-7p, 61 Fed. Reg. at 34,487. The ALJ also properly considered Degraw's lack of any work record since 2001, and concluded that it "significantly detracts from his credibility regarding his motivation to work." (Tr. at 13, 17.)

With respect to Dr. Southard's opinion, in March 2011, Degraw complained of lower back pain that radiated down both of his extremities and was exacerbated with very minimal activity. (*Id.* at 242.) He also reported to Dr. Southard that his knees give out on a regular basis and he uses a cane at times. (*Id.* at 243.) Upon examination by Dr. Southard, Degraw's gait was shuffling and slow and he was slow to get out of his

12

chair and off of the examination table. (*Id.*) In addition, Degraw's range of motion in his bilateral shoulders and lumbar spine was decreased, he complained of tenderness in his thoracic and lumbar spines, and straight leg raise tests were positive. (*Id.* at 243-44.) While such clinical findings "tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects," SSR 96-7p, 61 Fed. Reg. at 34,487, here, Degraw's statements to Dr. Southard and his observable findings are contradicted by Degraw's own reports throughout the record that he walks and bikes great distances, chops wood, and shoots pool, (Tr. at 45, 51, 239-40, 319, 336.) Further, on the same day as his evaluation by Dr. Southard, Degraw was examined by Dr. Moore, who indicated that Degraw's gait was normal. (*Id.* at 238.) The ALJ noted that, at the administrative hearing, Degraw used a cane that he had purchased at Wal-Mart, but was not using it properly to take pressure off either his knees or his back, and sat comfortably throughout the hearing, only appearing in discomfort when being specifically asked about his ability to sit. (*Id.* at 17-18, 40.) Despite Degraw's objections to the ALJ's observations, (Dkt. No. 11 at 20), an ALJ "may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the

13

individual's statements."  SSR 96-7p, 61 Fed. Reg. at 34,486.

Degraw points to treatment records which indicate Degraw's reports of pain, tenderness in his lumbar spine, decreased range of motion, limited squat, and gait dysfunction as support for Dr. Southard's opinion.  (Dkt. No. 11 at 17-19.)  However, Degraw began seeking treatment for his physical impairments in February 2011.  (Tr. at 284.)  Treatment notes from March and May 2011 reveal no abnormal clinical findings, but, instead, full range of motion of Degraw's lower lumbar spine and knees, and no pain with palpation.  (*Id.* at 280, 282.)  Degraw attended physical therapy from June 2011 until October 2011 and complained of lower back pain which was aggravated with standing, sitting, bending, and lying on his back or stomach.  (*Id.* at 298, 301, 307-09, 311-13, 316-17, 319-21.)  While his physical therapy treatment records indicate decreased range of motion, lower extremity weakness, and gait dysfunction, (*id.* at 301, 307), a September 2011 physical therapy treatment record notes that Degraw's "high pain levels do not correspond with his movements and his ability to [ambulate.]"  (*Id.* at 311.)  January and February 2012 treatment records from Comprehensive Pain Relief indicate pain upon straight leg raising and a decreased range of motion of Degraw's lumbar spine, but also note

14

Degraw's reports that treatment provided a greater than forty percent reduction in his pain. (*Id.* at 286-91.) Treating physician Maria Galu began treating Degraw in January 2012 and found "[m]inimal tenderness along the cervical, thoracic and lumbar spine. Straight leg elevation is negative. Bilateral knees with minimal crepitus. No swelling." (*Id.* at 323.) Thereafter, on March 9, 2012, Degraw presented to Dr. Galu requesting she complete disability paperwork. (*Id.* at 324-25.) Dr. Galu's examination only revealed tenderness along the lumbar spine and paraspinal muscle. (*Id.* at 324.)[6] In any event, Degraw's own reports of his functional capabilities provide substantial evidence to support the ALJ's physical RFC determination.

Turning to Degraw's mental impairments, Dr. Russell examined Degraw on two occasions in March 2011. (*Id.* at 335-37.) On the first occasion, Dr. Russell noted that Degraw complained of depression, but was "very vague about his symptoms," and had "great difficulty describing and/or elaborating on any of his symptoms." (*Id.* at 335, 337.) On his second examination, Dr. Russell noted that Degraw came in with brochures

---

[6] Despite these limited clinical findings, Dr. Galu completed a questionnaire on March 9, 2012 and opined that, in an eight-hour day, Degraw cannot sit for six hours or stand for two hours, and cannot lift over ten pounds. (Tr. at 329-30.)

15

from the waiting area regarding depression and bipolar disorder and began reading off some of the symptoms as his own. (*Id.* at 370.)[7] Later that month, Degraw was examined by consultative examiner Moore and reported difficulty sleeping, and feelings of depressions, hopelessness and irritability. (*Id.* at 237-38.) He reported punching and throwing things, self-mutilative behaviors, a diminished sense of pleasure, and a loss of energy. (*Id.* at 238.) Degraw also indicated some manic symptoms with mood swings and a decreased need for sleep, as well as flight of ideas, pressured speech, and agitation. (*Id.*) Degraw indicated excessive involvement in pleasurable activities and at times expansive moods, and reported to Dr. Moore that he had, in the past, "traveled up and down the coast hopping trains." (*Id.*) While the ALJ credited the portions of Dr. Moore's opinion supported by her clinical findings, (*id.* at 20), based on the foregoing, the ALJ did not err in discounting the portions of Dr. Moore's

---

[7] Based on his examinations, Dr. Russell diagnosed Degraw with adjustment disorder with mixed disturbance of emotions and conduct, and rule out borderline intellectual functioning, and assigned Degraw a Global Assessment of Functioning (GAF) score of seventy. (Tr. at 370.) GAF is a scale that indicates a clinician's overall opinion of an individual's psychological, social, and occupational functioning. *See Petrie v. Astrue*, 412 F. App'x 401, 406 n.2 (2d Cir. 2011). A GAF score of sixty-one to seventy indicates the existence of some mild symptoms, or some difficulty in social, occupational, or school functioning, but also that the individual is able to function fairly well and has some meaningful interpersonal relationships. *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

opinion that were tainted by the incredible subjective reports and complaints of Degraw.

In sum, the portions of Drs. Moore's and Southard's opinions that Degraw relies on are, simply put, inconsistent with the record as a whole and thus, are not entitled to greater weight. *See Roy*, 2002 WL 32502101, at *3 (explaining that, there is no "basis in law by which an ALJ must accept a medical opinion in its entirety even when premised on arguably false representations"). The ALJ's decision is, therefore, affirmed.

## C. Other Work

Finally, Degraw argues that the ALJ erred in making his step five determination. (Dkt. No. 11 at 22-24.) In particular, Degraw contends that the ALJ's errors in determining his RFC render his step five determination unsupported by substantial evidence. (*Id.* at 22.) Further, Degraw claims that the ALJ failed to meet his burden to demonstrate that other work exists which Degraw is capable of performing because he failed to obtain the testimony of a vocational expert (VE). (*Id.* at 22-24.) Again, the court disagrees.

In making his ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the

national economy.  *See* 20 C.F.R. §§ 416.920(g), 416.960(c); *White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  To make such a determination, an ALJ may rely on the Medical-Vocational Guidelines, referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines.  *See* 20 C.F.R. § 416.969; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009).  However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).  In that case, the ALJ should consult with a VE before making a determination as to disability.  *See id.*

Because Degraw's argument is, in part, predicated on a perceived error in the ALJ's RFC analysis—which has already been affirmed—the court addresses only his claim that the ALJ was required to consult a VE. (Dkt. No. 11 at 22-24.)  Here, the ALJ determined that, although Degraw

18

suffers nonexertional limitations as a result of his possible borderline intellectual functioning, these limitations do not significantly limit Degraw's occupational base of unskilled work at all exertional levels. (Tr. at 22-23.) In so doing, the ALJ determined, and the court agrees, the use of a VE was unnecessary. As the Commissioner points out, Degraw was limited to simple tasks and only occasional contact with the general public, and unskilled work primarily involves objects, not data or people. (Dkt. No. 14 at 24-25); *see* SSR 85-15, 1958 WL 56857 at *4 (1985).

### D.  Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Degraw's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 3, 2014
Albany, New York

_/s/ Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court